IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 17-00093 WHA |
| Plaintiff, | **ORDER RE MOTION TO QUASH SUBPOENA** |
| v. | |
| MARCUS ETIENNE, ELIZABETH GOBERT, CRAIG MARSHALL, and MARIO ROBINSON | |
| Defendants. | |

## INTRODUCTION

In this prosecution under the Racketeer Influenced and Corrupt Organizations Act, the Violent Crimes in Aid of Racketeering Act, and other penal statutes, the City of Oakland moves to quash a Rule 17(c) subpoena. The government joins the motion. For the reasons below, the motion to quash is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

According to the ten-page superseding indictment, defendant Marcus Etienne was a member of the "Etienne Enterprise," a criminal organization that ran a marijuana-trafficking operation from California to Louisiana and Texas. In March 2016, Etienne, along with certain of his co-defendants, allegedly murdered Trice Thibodeaux ("T.T.") in furtherance of their marijuana-trafficking operation (Dkt. No. 37).

The case schedule ordered herein set a December 21 deadline for the government to provide defendants with a trial exhibit list and a final list of witnesses for its case-in-chief. "*By that same date, the government shall have produced all Brady-Giglio* and Jencks Act material" (Dkt. No. 215) (emphasis added). In August 2018, Etienne's counsel submitted an *ex parte* application for the issuance of a subpoena *duces tecum*. The subpoena directed the City of Oakland's Police Department to produce materials related to the investigation of T.T.'s murder. A September 4 order granted Etienne's *ex parte* request. The City of Oakland moved to quash the subpoena, which motion the United States sought to join (Dkt. Nos. 230, 232).

The first round of oral argument on Oakland's motion occurred on October 2. Following the hearing, an order directed counsel for the parties to meet and confer regarding the particular evidentiary items raised in Etienne's opposition to the motion to quash. At a supplemental hearing, government counsel explained that, following the meet and confer, additional materials had been produced to defendants pursuant to a protective order. Nevertheless, defense counsel remained skeptical of the government's claim that certain documents sought by the subpoena did not exist. Rather, defense counsel opined that the materials simply were not in the government's possession. Accordingly, in a subsequent evidentiary hearing, Oakland Police Sergeant Richard Vass testified as to the existence of certain documents sought by the subpoena. During his testimony, Sergeant Vass identified notes of witness interviews which had not been produced to the defense but which the United States claimed to have in its possession. Following the hearing, Oakland submitted the subpoenaed materials for *in camera* review. Another round of oral argument followed and the parties submitted supplemental briefing (Dkt. Nos. 242–43, 254, 264, 279, 281–84). This order accordingly follows full briefing, oral argument, an evidentiary hearing, supplemental briefing, and an *in camera* review.

**ANALYSIS**

The pre-trial production of documents pursuant to a Rule 17(c) subpoena is appropriate when the following conditions are met: (1) "the documents are evidentiary and relevant"; (2) "they are not otherwise procurable reasonably in advance of trial by exercise of due diligence"; (3) "the party cannot properly prepare for trial without such production and inspection in

advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial"; and (4) "the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). "A decision to enforce or quash a pretrial subpoena under [Rule] 17(c) rests within the discretion of the district court and will be disturbed on appeal only where the action was clearly arbitrary or without support in the record." *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981).

Here, the Oakland subpoena requested:

> (1) All information related to the investigation of the homicide of Trince Thibodeaux (DOB 10/27/87) that occurred on March 22, 2016, (Oakland Police Department Case No. 2016-00907) including:
>
> > (a) Any materials, notes, reports, recordings, and memoranda detailing interviews of witnesses, leads, sources of information, etc. related to the investigation;
> >
> > (b) Any materials, notes, reports, recordings, and memoranda detailing the execution of any warrants and/or any searches conducted and the results thereof;
> >
> > (c) Any requested forensic testing, and any resulting crime lab reports;
> >
> > (d) Any scientific analyses of evidence;
> >
> > (e) All PDRD (body cam) video recordings related to the investigation; and
> >
> > (f) Any results from investigation into Mr. Thibodeaux's background, including LEAPS and CLETS reports.

**1. *NIXON'S* REQUIREMENTS ARE NOT MET.**

That an earlier order approved the issuance of the subpoena does not end the *Nixon* inquiry. With the benefit of Oakland's arguments, this order concludes that the subpoena does not request materials with the level of specificity required by *Nixon*. The subpoena calls for highly relevant information yet is extremely broad in scope. Etienne does not request specific documents, but rather seeks an entire investigative file. Such a request amounts to "a blind fishing expedition seeking unknown evidence." *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (citation omitted). For this reason, Oakland's motion to quash is **GRANTED**, except to the limited extent explained below. This order accordingly need not reach Oakland's argument

that responding to the subpoena would be unreasonable because it has turned over the requested materials to the prosecution.

It should be noted, however, that this order shares the defense's skepticism of Oakland's claim that all of the records sought in the subpoena have been turned over to the federal government. Such blunderbuss statements are often inaccurate, as has been borne out through this litigation. By Oakland's own admission, it learned during this dispute that a report had never made it into the government's file. That report has since been turned over to both the government and the defense. A recent filing by defendant Mario Robinson raises additional concerns that evidence originally within Oakland's possession only very recently made it to the government and, accordingly, to the defense. On the current record, it remains unclear whether all of Oakland's materials have, in fact, been turned over to the government. In light of this ongoing concern, this order now addresses certain issues raised during the litigation on the instant motion to quash.

**2. THE SCOPE OF *BRADY*.**

A prior notice and order already dispelled any misconception that the scheduling order in this case set a deadline *on* which — rather than a deadline *by* which — the government shall have disclosed *Brady* material (Dkt. No. 287). This order now addresses another *Brady* concern implicated by Oakland's motion to quash.

As the undersigned judge has noted in prior cases, the government is fond of saying that it knows its *Brady* obligations and will honor them. *United States v. Cerna*, 633 F. Supp. 2d 1053, 1056 (N.D. Cal. 2009); *United States v. Diaz*, No. 05-cr-0167, 2008 WL 360582, at *1 (N.D. Cal. Feb. 8, 2008). So too here. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Where the government uses a state agency as a "lead investigating agent," the state agency is deemed to be the government's agent within the meaning of *Brady*. *United States v. Price*, 566 F.3d 900, 908–09 (9th Cir. 2009).

In an attempt to limit its *Brady* obligations in this case, the government has denied any "joint investigation" between the Oakland Police Department and the federal government.

4

Instead, the government claims to have "adopted" the investigation from Oakland and Oakland claims to have turned over its entire investigatory file when the case was "federalized" (Dkt. Nos. 230 at 7, 280 at 22:12–19). Whether or not there was (or currently is) a joint investigation between OPD and the FBI is less than clear. Despite the government's representations during the various hearings on the motion to quash, during the October 23 evidentiary hearing Sergeant Vass testified that he was "the lead investigator" for OPD's investigation into the murder of T.T. and that he "would also say that it's somewhat also a joint investigation with the FBI, as well" (Dkt. No. 270 at 23:12–13, 24:16–23). Moreover, in its supplemental briefing, the government described Sergeant Vass as "the lead homicide investigator and FBI Task Force Officer assigned to this case" (Dkt. No. 283 at 2). Although this order notes the issue, resolution of whether or not OPD should be deemed an agent for *Brady* purposes is premature in light of defendants' currently-pending motion to compel the government's production of all *Brady* materials in OPD's possession (Dkt. No. 296).

Even absent a joint investigation, the fact that OPD has turned over its investigatory files to the federal government itself gives rise to a *Brady* duty, albeit of a narrower scope. As to the files actually provided by the state agency to the government for purposes of the "federalized" investigation, *Brady* requires that the prosecution team review those same files for defense evidence. But what about *Brady* material still languishing in the state agency's desk drawer? Where, as here, the government disavows an agency relationship with local police for purposes of *Brady*, a narrowly directed and reasonable Rule 17 subpoena should be allowed. Without an alternative guarantee that all pro-defense material will be found and disclosed, Rule 17 remains an appropriate avenue for the defense to exercise its own discovery rights and engage in its own investigation. Nor would the use of Rule 17(c) in such a manner — *i.e.*, to obtain documents that have not made it into the hands of the federal government — run afoul of Rule 16(a)(2) and our court of appeals' Rule 16 decision in *United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007). Because both *Fort* and Rule 16 govern a defendant's right to obtain discovery from the government, a Rule 17 subpoena used to spot-check for documents not within the government's

possession would clearly not apply. Moreover, such a narrowly-tailored subpoena would likely satisfy the requirements of *Nixon* and therefore be enforced.

### 3. JENCKS ACT STATEMENTS.

As the parties recognize, a Rule 17(c) subpoena may not be used to obtain Jencks Act statements. Rule 17(h) provides: "No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Rule 26.2, in turn, incorporates the Jencks Act and only allows "witness statements" to be requested by a defendant after the witness has testified on direct examination. A "statement" is further defined as "(1) a written statement that the witness makes and signs, or otherwise adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a record; or (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement."

Oakland argues that by requesting "materials, notes, reports, recordings, and memoranda detailing interviews of witnesses, leads, sources of information, etc. related to the investigation," the subpoena requests witness "statements" protected by Rule 17(h). As a general matter, although Oakland did not identify particular items in its files that fall within Rule 26.2(f)'s definition of a "statement," this order agrees that the production of true witness statements would be precluded by the Jencks Act (until the deadline agreed to by the parties and set forth in the scheduling order).

In its supplemental submission the government argues that the officer notes submitted for *in camera* review are Jencks Act statements because Sergeant Vass may be a government witness. This order disagrees for two reasons. *First*, the government's description of Sergeant Vass as "the lead homicide investigator and FBI Task Force Officer assigned to this case" is insufficient to show that he will be a trial witness for the prosecution. *Second*, "[a] government agent's rough notes will not be Jencks Act statements when they are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations." *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009) (citation omitted); *see also United States v. Reed*, 575 F.3d 900, 921 (9th Cir. 2009).

Here, nothing in the rough agent notes indicate that they were adopted or affirmed nor do they indicate they were substantially verbatim recitals of the witness' statements recorded contemporaneously with the making of the statements.

Having gone to such lengths to get to the bottom of this problem, and because the government's original representation that it had all of Oakland's files turned out to be incomplete, the Court will allow defense counsel to copy and inspect the officer notes lodged for *in camera* review pursuant to an attorney's-eyes-only protective order. In order to allow any party the opportunity to seek emergency relief from our court of appeals, defense counsel may not inspect or copy the notes until **DECEMBER 10**. Except for these select documents, the motion to quash is **GRANTED** for failing to meet the requirements of *Nixon*.

**CONCLUSION**

To the extent stated above, the motion to quash is **GRANTED**. Robinson's motion for joinder is **GRANTED**. The government's motion for joinder is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: December 2, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE