1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10
11  UNITED STATES OF AMERICA,                    No. CR 17-00093 WHA

12          Plaintiff,
                                                 **ORDER DENYING MOTION
13      v.                                       TO SUPPRESS STATEMENTS**

14  MARCUS ETIENNE, ELIZABETH
    GOBERT, CRAIG MARSHALL, and
15  MARIO ROBINSON,

16          Defendants.
                                        /
17

18                              **INTRODUCTION**

19          In this prosecution under the Racketeer Influenced and Corrupt Organizations Act, the

20  Violent Crimes in Aid of Racketeering Act, and other penal statutes, defendant moves to

21  suppress certain statements.  For the reasons below, the motion to suppress is **DENIED**.

22                              **STATEMENT**

23          In the afternoon of December 13, 2016, following the issuance of an arrest warrant in this

24  case, Louisiana State Police Trooper John Solet stopped a vehicle in which defendant Marcus

25  Etienne was a passenger.  Trooper Solet arrested Etienne and transported him to the Louisiana

26  State Police Criminal Investigations Division for questioning.  Etienne later signed an "advice of

27  rights" form acknowledging that he understood and waived his rights to remain silent, to consult

28  an attorney prior to questioning or to have an attorney present during questioning, and to stop

    answering questions at any time.  Etienne also verbally acknowledged his agreement to answer

1  questions without a lawyer present. Thereafter, officers conducted three interrogations of

2  Etienne spanning approximately seven hours, with the third and final interrogation concluding at

3  11:13 p.m. on December 13. Etienne now moves to suppress these interrogations (Dkt. Nos.

4  305, 333). The interrogations were video recorded and Etienne has submitted those recordings

5  in support of the instant motion to suppress (Def. Exhs. A–D). References to times are to the

6  time stamp included in the lower right-hand corner of the recordings. This order follows full

7  briefing, oral argument, and an evidentiary hearing.

8  **ANALYSIS**

9  A defendant may waive his *Miranda* rights "provided the waiver is made voluntarily,

10  knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Only if the

11  'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and

12  the requisite level of comprehension may a court properly conclude that the *Miranda* rights have

13  been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citation omitted). The government

14  must prove the validity of a waiver by a preponderance of the evidence. *Colorado v. Connelly*,

15  479 U.S. 157, 168 (1986).

16  **1.    VOLUNTARINESS.**

17  Courts consider the "totality of all the surrounding circumstances" in determining the

18  voluntariness of a confession, including the characteristics of the accused and the details of the

19  interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). A statement is not

20  voluntary "if because of mental illness, drugs, or intoxication, the statement was not the product

21  of a rational intellect and a free will." *United States v. Kelley*, 953 F.2d 562, 565 (9th Cir. 1992).

22  Etienne argues that he could not voluntarily waive his *Miranda* rights due to his level of

23  intoxication (at the beginning of questioning) and later withdrawal (at the end of questioning).

24  He testified that in the years leading up to his December 2016 arrest, he typically consumed one

25  pint of liquid codeine with promethazine (*i.e.* "syrup") per day, whereas on the night preceding

26  his arrest he consumed between 2.5 to 3 pints. Because drinking promethazine gave him energy,

27  Etienne testified, he had not slept the night prior to his arrest. Once he stopped drinking it,

28  however, he said he would become tired, weak and hungry.

2

1         At the beginning of the first interrogation, Etienne signed an advice of rights form and

2 verbally acknowledged that he wished to waive his *Miranda* rights (Def. Exh. A at 16:38; Gov't

3 Exh. B). While Etienne's intoxication during the interrogations seems apparent from the video

4 recordings, as demonstrated by his animated gestures, slurred speech and spilling of water (*see*,

5 *e.g.*, Def. Exh. A at 16:25–26, 16:43–45), his demeanor, manner and speech while testifying

6 during the evidentiary hearing closely approximated his behavior in the video. Moreover,

7 throughout the interrogations Etienne appropriately and coherently responded to the officers'

8 questions. At certain points, Etienne even acknowledged that he was aware that the interrogation

9 was being video recorded (*id.* at 18:26, Def. Exh. C at 21:56–57). And, although Etienne

10 repeatedly testified that he could not remember the interrogations because he was "high out of

11 [his] mind," his ability to remember events leading up to his arrest — including that all but one

12 of his girlfriend's children had gone to school, that he smoked a precise amount of marijuana

13 with papers, and that his friend picked him up so they could get food at Burger King but their

14 vehicle was stopped by police before they reached the restaurant — seriously undermined the

15 credibility of this claim.

16         Etienne highlights other aspects of the December 13 interrogations, including the length

17 of the questioning, Etienne's apparent fatigue which culminated in him beginning to doze off at

18 the end of the interrogations, and Etienne's having twice stated that he had "never ate nothing."

19 While Etienne's fatigue and hunger are relevant, the video nevertheless demonstrates that he

20 remained coherent and responsive while officers were present and never asked to cease

21 questioning (Def. Exh. A at 17:26–31; Def. Exh. C at 22:38–22:48; Def. Exh. D at 22:48–51,

22 23:10–11). In sum, the preponderance of the evidence shows that Etienne's ability to think

23 rationally was not so impaired by his intoxication and/or withdrawal so as to render his

24 statements involuntary.

25         **2.**     **KNOWING AND INTELLIGENT.**

26         The preponderance of the evidence also shows that Etienne's waiver was knowing and

27 intelligent. In making this determination, courts again consider the totality of the circumstances,

28 including the defendant's mental capacity and language skills, whether the defendant signed a

written waiver, whether he appeared to understand his rights, whether his rights were individually and repeatedly explained to him, and whether he had prior experience with the criminal justice system. *United States v. Garibay*, 143 F.3d 534, 538 (9th Cir. 1998).

Etienne's testimony that he did not understand he had a choice as far as participating in questioning lacks credibility and is rejected. As set forth above, Etienne signed a written waiver and enthusiastically agreed to waive his rights at the beginning of questioning. Etienne testified that he had been arrested at least five times prior to the December 13 interrogations. When the officer began to provide a second set of *Miranda* advisements at the beginning of the third interrogation, Etienne told the officer that he was a "convicted felon" and so the officer did not need to "go through it," prompting the officer to respond "[n]o, I do, I really do," and after which Etienne again acknowledged that he understand and waived his rights (Def. Exh. D at 22:48–50). Nothing in the record indicates that he lacked the language skills or mental capacity to understand the nature of his rights.

**CONCLUSION**

For the reasons stated above, the preponderance of the evidence shows that Etienne's waiver of rights on December 13 was voluntary, knowing and intelligent. The motion to suppress the December 13 interrogations is accordingly **DENIED**.

**IT IS SO ORDERED.**

Dated: March 4, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4