IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 17-00093 WHA |
| Plaintiff, | |
| v. | **ORDER RE MOTION TO SUPPRESS FRUITS OF DECEMBER 2016 SEARCHES OF VEHICLE AND CELLULAR PHONES** |
| MARCUS ETIENNE, MARIO ROBINSON and BURTE GUCCI RHODES, | |
| Defendants. | |

**INTRODUCTION**

In this prosecution under the Racketeer Influenced and Corrupt Organizations Act, the Violent Crimes in Aid of Racketeering Act, and other penal statutes, defendant moves to suppress items of evidence seized following a traffic stop. For the reasons below, the motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

On December 5, 2016, Detective Logan Kartchner of the St. Landry Parish Sheriff's Department recognized defendant Marcus Etienne as he drove by on Highway 744 in Opelousas, Louisiana. Detective Kartchner knew that Etienne had an active arrest warrant for "telephone communication harassment" and noticed that Etienne did not have a seatbelt on. He initiated a traffic stop, signaled Etienne to step out of the vehicle, and placed him in restraints. When asked whether he had any weapons on him, Etienne responded that he had a bag of marijuana in his pocket. Detective Karchner reached into Etienne's pocket and retrieved a personal-use amount

of marijuana and a cellular phone. Despite finding the marijuana in Etienne's pocket, Detective Karchner did not smell marijuana on Etienne's person (Tr. 31:10–36:4, 45:16–22, 67:5–20).[1]

After a second officer arrived on scene, Detective Kartchner went to speak with the vehicle's passenger. As he approached, he smelled the odor of marijuana emanating from the rolled-down window. Three additional officers eventually arrived at the scene. Detective Kartchner's subsequent search of the vehicle turned up two cell phones — one in the console and one on the floor under the driver's seat — and bottles of promethazine. No marijuana was found in the vehicle. The officers transported Etienne to the St. Landry Parish jail on the active arrest warrant (Tr. 36:17–38:18, 44:20–45:7, 67:21–70:17).

On December 6, 2016, Detective Cory Winmill of the St. Martin Parish Sheriff's Office authored a search warrant application. The application sought a warrant to search "Mobile Telephones" where "evidence of the crime(s) of *No charge at this time*" would be found. That same day, a judge from the 16th Judicial District Court in St. Martin Parish, Louisiana, issued a warrant to search a residence on Margaret Street in St. Martinville, Louisiana, for "evidence of the crime of No charge at this time" (Dkt. No. 307-2) (emphasis added). A forensic analysis of the three cell phones seized from Etienne during the traffic stop occurred that same day (Dkt. No. 355).

Etienne moves to suppress the evidence seized pursuant to the search of the vehicle, including (1) four medicine bottles, (2) the blue Samsung flip phone (MEID ending in 3912) and the silver LG phone (MEID ending in 2167-6), (3) photographs documenting the search of the car, (4) a medicine bottle with Etienne's name on it, and (5) the forensic analysis of the blue Samsung flip phone (MEID ending in 3912), the silver LG phone (MEID ending in 2167-6), and the black Samsung flip phone (MEID ending in 2446) (Dkt. No. 307 at 5–6). This order follows full briefing, oral argument, and an evidentiary hearing. Both sides have requested that the motion be decided on the current evidentiary record.

---

[1] Mr. Kartchner no longer works for the St. Landry Parish Sheriff's Office (Tr. 30:17–20). This order refers to Detective Kartchner by the position he held at the time of the traffic stop.

2

**ANALYSIS**

**1.   WARRANTLESS SEARCH OF VEHICLE AND SEIZURE OF THE CELL PHONES.**

Warrantless searches "are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation omitted). One such exception is the vehicle exception. *Carroll v. United States*, 267 U.S. 132, 153–54 (1925). Under the vehicle exception, officers may search a vehicle and any containers found therein without a warrant, so long as they have probable cause to believe the car has evidence of criminal activity. *California v. Acevedo*, 500 U.S. 565, 579–580 (1991). The government has the burden to prove the applicability of the exception by a preponderance of evidence. *United States v. Vasey*, 834 F.2d 782, 785 (9th Cir. 1987).

Etienne does not challenge the legality of the traffic stop. Nor does he dispute that, under the law of this circuit, the officers would have had probable cause to search the vehicle if Detective Kartchner did, in fact, smell the odor of marijuana emanating from the vehicle. Etienne instead argues that Detective Kartchner's testimony should not be credited because it is simply too far-fetched to believe that Detective Kartchner recognized him driving on the highway, that Detective Kartchner's direct reports in the narcotics unit just happened to join the traffic stop, and that Detective Kartchner would ignore obvious officer-safety concerns by signaling Etienne to step out of his vehicle and walk towards the patrol car. Moreover, Etienne argues, the dash cam video — which should have automatically recorded upon the activation of the police vehicle's emergency lights — either did not record or was not preserved. And, ultimately, the officers failed to find any marijuana other than the small amount seized from Etienne's pocket.

This order disagrees that these circumstances belie probable cause to search the vehicle for marijuana. Detective Kartchner was a credible witness and this order finds his testimony credible and accurate. He testified consistently and conceded those facts he could not recall. The circumstances of the stop, in and of themselves, are insufficient to undercut the veracity of Detective Kartchner's testimony that he smelled the order of marijuana emanating from the car. This order therefore concludes that there was probable cause to search Etienne's vehicle. The

3

motion to suppress (1) the four medicine bottles, (2) photographs documenting the search of the car, and (3) a medicine bottle with Etienne's name on it is therefore **DENIED**.

But even assuming the legality of the search, the government has failed to justify the warrantless seizure of the two cellular phones found in Etienne's vehicle. To be sure, the "plain view doctrine" would have permitted the officers to seize any object in the vehicle if "its incriminating character [was] immediately apparent." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). "If, however, the police lack[ed] probable cause to believe that an object in plain view [was] contraband without conducting some further search of the object — *i.e.*, if its incriminating character [was not] immediately apparent — the plain-view doctrine cannot justify its seizure." *Ibid.* (internal citations and quotation marks omitted). Here, the government proffers no explanation as to how the "incriminating character" of the cellular phones was "immediately apparent." Because the government has failed to show that the warrantless seizure of the two cellular phones falls within an exception to the Fourth Amendment's warrant requirement, the motion to suppress the blue Samsung flip phone (MEID ending in 3912) and the silver LG phone (MEID ending in 2167-6) is **GRANTED**.[2]

### 2. SEARCH OF CELLULAR PHONES.

Officers must generally secure a warrant before conducting a search of data on cell phones. *Riley v. California*, 573 U.S. 373, 386 (2014). The Fourth Amendment unambiguously states that a warrant may be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This language imposes three requirements for the issuance of a valid search warrant. *First*, the warrant must be issued by a neutral and detached magistrate. *Second*, the warrant must be supported by "probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense." *Third*, the warrant must describe the things

---

[2] Contrary to the government's assertion in its supplemental brief that Etienne "has not raised any separate challenge to the seizure of his cell phones, unrelated to the search of his vehicle" (Dkt. No. 387 at 6), at the evidentiary hearing defense counsel and the undersigned judge squarely raised the issue of whether or not, even assuming the search's validity, Detective Kartchner could legally seize the cell phones without a warrant (Dkt. No. 386-1 at 86:22–87:16). Despite having the opportunity to do so, the government failed to address the issue in its supplemental brief.

4

to be seized and the place to be searched with particularity. *Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal quotation marks omitted). Because this order concludes that the warrant failed to meet the third requirement, it does not reach Etienne's alternative argument that the warrant was not supported by probable cause.

Detective Winmill searched three cellular phones. The warrant, by contrast, authorized the search of a residence on Margaret Street in St. Martinville, Louisiana, for "evidence of the crime of *No charge at this time*," including, among other things, "[p]hotographs, videotapes, compact disks, floppy disks, flash memory, memory sticks, digital camera(s), digital storage media of any kind and films," computers and "other computer-related electronic or physical devices that serve to transmit or receive information to or from a computer," any "electronic device used for the electronic storage of names, addresses and phone numbers," and "[p]aper, documents or any other readable material, whether generated by handwriting, typewriter, computer, or any other device, which relates in any way to communications with any juveniles" (Dkt. No. 307-2). This is insufficient to meet the constitutional requirement to describe the place to be searched and the items to be seized with particularity.

A warrant's description of the place to be searched and the things to be seized "must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized," thereby preventing "general, exploratory searches and indiscriminate rummaging through a person's belongings." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (citation omitted). Momentarily setting aside the problem that the warrant authorizes the search of a residence rather than a search of cellular phones, the government does not dispute that it could have narrowed the descriptions in the warrant "either by describing in greater detail the items one commonly expects to find on premises used for the criminal activities in question, or, at the very least, by describing the criminal activities themselves." *Id.* at 964. The warrant instead impermissibly "authorize[s] wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide[s] no guidelines to distinguish items used lawfully from those the government had probable cause to seize." *Ibid*. Because Officer Winmill did not have in his possession a warrant particularly describing the things he intended to seize,

5

proceeding with the search of the phones was clearly "unreasonable" under the Fourth Amendment.

This order rejects the government's halfhearted argument that the warrant incorporates the application by reference, thereby saving the warrant from its facial invalidity. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). An affidavit is deemed to be incorporated into a warrant, thereby potentially curing any defects, only "if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009) (internal quotation marks omitted).

As to the first element, "[a] warrant expressly incorporates an affidavit when it uses 'suitable words of reference.'" It is sufficient for a warrant to "point[ ] to the affidavit explicitly, noting 'the supporting affidavit(s)' as the 'grounds for application for issuance of the search warrant.'" *Id*. at 699–700 (citations omitted). Here, the warrant stated that "the affidavit submitted in support of the request for this search warrant indicates that the affiant has shown probable cause for its issuance" and earlier referenced that "an affidavit has been made under oath by Cory Winmill" (Dkt. No. 307-2). Under this circuit's binding precedent, this language would be sufficient to incorporate the affidavit by reference.

As to the second element, however, the government has failed to put forth any evidence by declaration or otherwise (despite having ample opportunity to do so) indicating that the affidavit was either physically attached to or accompanied the warrant at the time Detective Winmill executed the search. Instead, in positing that an evidentiary hearing on this issue would serve no purpose, the government argues that because the search was of cellular phones already within the government's possession, "the relevant question is what information was before the authorizing judge." The government cites no authority to support this proposition. Contrary to government, merely having the warrant and affidavit before the authorizing judge would not

serve the goal of the "cure by affidavit rule," which is to "consider those affidavits that limit the 'discretion of the officers executing the warrant.'" *SDI*, 568 F.3d at 699 (citation omitted).[3]

Turning to the next problem — that the search warrant authorized the search of a residence whereas the search itself was conducted on the cellular phones seized during the December 5 traffic stop — the government argues that the warrant may nevertheless be upheld under the rule of severance by excising the physical location from the warrant. While it is true that where invalid portions of a warrant may be stricken and the remaining portions held valid, seizures pursuant to the valid portions will be sustained, *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984), that rule requires "that identifiable portions of the warrant be sufficiently specific and particular to support severance." *Spilotro*, 800 F.2d at 967. Such is not the case here. Absent the physical address, the warrant authorizes an even more generalized search for broad categories of items evidencing "the crime(s) No charge at this time."

Finally, the good faith exception does not save the search of the cellular phones. The government bears the burden of showing that the good-faith exception applies. *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013). Here, the lack of particularity rendered the warrant "plainly invalid." *Groh*, 540 U.S. at 557. Moreover, the government cannot argue that Detective Winmill "reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid" because he himself prepared the invalid warrant. *Id*. at 564. Etienne's motion to suppress the forensic analysis of the blue Samsung flip phone (MEID ending in 3912), the silver LG phone (MEID ending in 2167-6), and the black Samsung flip phone (MEID ending in 2446) is accordingly **GRANTED**.

---

[3] An order dated February 5, 2019, explained that in connection with the February 20 evidentiary hearing on Etienne's motions to suppress, "the Court [was] particularly interested in the government's argument that any defect in the warrant was cured by the warrant's incorporation of the accompanying affidavit." After the government failed to present any evidence on the issue at the February 20 hearing, an additional evidentiary hearing was set for March 13. On March 11, the government filed a notice stating that the relevant witness, Detective Winmill, was unavailable for the March 13 hearing due to foreign travel. On March 21, the government submitted a second notice in which it stated that Detective Winmill would be unavailable for testimony for at least another 30 days but that, in any event, "the government does not believe that Mr. Winmill's testimony is necessary for the resolution of defendant's motion." At no point did the government offer a declaration or other non-testimonial evidence in support of its "incorporation by reference" argument (Dkt. Nos. 365, 376, 384).

**CONCLUSION**

To the extent stated above, the motion to suppress is **GRANTED**. The motion is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: May 7, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE